ARACELIS DÍAZ CEBALLOS DE VELA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, JORGE L. CÓRDOVA, JUDGE, Respondent.

No. 1234. Argued February 17, 1941.—Decided February 20, 1941.

*Mariano Acosta Velarde* and *Federico Acosta Velarde,* for petitioner. *Monserrat, De la Haba & Monserrat,* for the intervener, the tutor appointed in the case.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

Miss Luisa María de Elzaburu y Ceballos was declared incapable of governing her person and her property by an order rendered by the District Court of San Juan on March 26, 1928. By the same order, her aunt, Luisa de Elzaburu Vizcarrondo, was appointed tutrix of the young woman, said tutrix having carried out her duties as such until October 26, 1940, when she died in the City of San Juan. In her will she named her niece and ward as her sole and universal heir and appointed as her tutor Adolfo de Hostos, in the first place,

and Dr. Luis L. Biamón, in the second place, both to guard property left by the deceased to her ward.

On November 7, 1940, the District Court of San Juan, at the instance of the petitioner herein, Mrs. Aracelis Díaz Ceballos de Vela, appointed the latter tutrix and administratrix of the property of her first counsin, Luisa María, the one who had been declared incapable. On the 12th of the same month and within the same proceeding, Messrs. de Hostos and Biamón appeared as executors and testamentary tutors of the incapacitated, and filed a petition in which, after setting forth the facts which we have already narrated, they alleged in brief the following:

(a) That the incapacitated young woman has none of the relatives designated by Section 186 of the Civil Code as those upon whom the law confers guardianship, and that in that case, guardianship should be conferred by order of the court in accordance with Section 194 of the same Code;

(b) That the tutrix, Mrs. Aracelis Díaz y Ceballos, has not taken over her office yet, and that if her appointment should be upheld, the incapacitated would have two guardians, one for the custody of the property inherited from Luisa de Elzaburu and another for the custody of her person and her private property, although Section 169 of the Civil Code provides that guardianship should be exercised by only one tutor.

The executors and testamentary tutors ended by praying the court to issue, after hearing them and the court appointed tutrix, the order "most convenient in its opinion, to the interest of the incapacitated."

On the same day that the petition of the executors and testamentary tutors was filed, the respondent judge issued an order setting aside that issued on November 7, 1940, whereby he appointed Mrs. Díaz Ceballos as tutrix of the incapacitated, and through another order of the same date, he set the hearing of the petition of the executors and testamentary tutors and of Mrs. Díaz Ceballos' motion concerning appointment of a tutor, for November 22, 1940. After the

hearing had been held on the above mentioned date, the district court rendered on January 13, 1941, a decision appointing Mr. Adolfo de Hostos tutor of the incapacitated to guard her person and property and to have all the powers that the law confers upon tutors. Mrs. Aracelis Díaz Ceballos then filed the instant petition of certiorari, in order to obtain a review of said decision, praying that the same be reversed and that she be named tutrix in place of Mr. de Hostos.

██ The first alleged procedural error with which the lower court is charged is that it did not apply the provisions of Section 175 of the Civil Code (1930 ed.), which, as the petitioner alleges, requires the appointment of a tutor other than the testamentary tutor to accept or repudiate the inheritance in the name of the incapacitated, the appointment of a testamentary tutor not having any effect until the inheritance should be accepted. The Section which is alleged to have been violated reads thus:

"Section 175.—Any person leaving an inheritance or legacy of importance to minors or incapacitated persons may appoint a tutor for the administration of such property. Such appointment shall not hold, however, until the inheritance or legacy shall have been accepted by the father, the mother, or the tutor of the minor, with the approval of the proper district court."

Section 207 of the Spanish Civil Code, which is the equivalent of Section 175 of our Code, provides that the appointment of the testamentary tutor "will not have any effect until the family council should have decided to accept the inheritance or legacy."

We do not find in the above mentioned Section 175 nor in Sections 167 and 168 of the same Code, cited by the petitioner, any provision prohibiting the district court from appointing to the position of tutor over the person and the private property of the incapacitated, the same person appointed by the testator to administer the properties left by her as her inheritance. Neither have we been able to find

any reason—and petitioner has not adduced any either—to convince us of the possible existence of an incompatibility between the office of testamentary tutor and that of a dative tutor. It is true that the dative tutor is the one called to accept the inheritance in the name of the incapacitated and that the appointment as testamentary tutor can not have effect until the inheritance has been accepted; but that cannot be considered an incompatibility if it is considered that the acceptance of the inheritance by the dative tutor cannot have effect as long as it is not approved by the court. And we should presume that the dative tutor would not have any interest in recommending, nor the court in approving, the acceptance of an inheritance which would be onerous to the incapacitated. Furthermore, the tutor needs judicial authorization to accept the inheritance without the benefit of inventory or to repudiate it. Section 212 of the Civil Code.

■ The allegation of the petitioner that Sections 167 and 168 of the Civil Code (1930 ed.) "require the appointment of a tutor to take care of the person and personal property of the incapacitated, aside from the testamentary tutor" is not upheld by the letter of the statute nor by any authority which has been submitted to our consideration. The first of said Sections merely defines the object of guardianship and the second enumerates the persons subject to guardianship.

Among the general provisions of the Civil Code applicable to dative tutorship is Section 169 (Section 201 of the Spanish Code) which provides that "tutorship shall be exercised by a single tutor." The legislative command is so clear that surely the district court would not be empowered to appoint two more tutors over a single minor or incapacitated.

The Law of Partidas admitted the plurality of tutors which would exercise their offices jointly but having in mind the differences which would arise between them it provided that there should be selected from among the tutors, one who would be entrusted with the personal custody of the ward.

The Civil Code goes still further, and in order to prevent disagreement between the tutors, it provides that tutorship should be exercised by a single tutor.

In his commentaries on Section 201 of the Spanish Code (Vol. 4, pages 140–141), Scaevola says:

". . . Most of the foreign codes have similar provisions, and the reason is that all of them seek to obtain that the minor's interest be guaranteed not only physically, as for example by a bond, but also by guarantees of another kind, as for example, the tutor's probity, his conduct in strict accord with the requirements of an honest administration, his care, everything in fact being directed towards the greater benefit of the minor entrusted to his guardianship; and care being taken that the tutor's interest in his ward be not distracted in quarrels with other persons who might dispute his guardianship . . . Here is the reason why all the codes insist on the unity and singularity of the tutor's function. In our opinion, this unity should be sought whenever it is compatible with the other provisions of the Code."

When it designated Mr. de Hostos as tutor, Mr. de Hostos being the person appointed by the aunt and former tutrix of the incapacitated to administer the properties of the inheritance, the respondent court had in mind, undoubtedly, the convenience of entrusting a single person with all the powers and responsibilities of the tutorship. The appointment of Mr. de Hostos is in our opinion compatible with the provisions of the Civil Code. As soon as he assumes the duties of his office of dative tutor, he will be able to accept, with the approval of the district court, the inheritance which was left to the incapacitated by the will of her deceased aunt. From that moment, his designation as testamentary tutor will have effect and all the tutelary powers over the custody of the person and the property of the incapacitated, Luisa María de Elzaburu y Ceballos will be united in one single person.

The lower court had ample power and discretion to issue the order which we are now reviewing, and in our opinion it

properly used both. It could have designated the petitioner as tutrix, as she is a person whom we consider capable of assuming the office which she seeks, and if it had done so, we would not have disturbed its decision in the absence of facts showing an abuse of discretion.

The circumstance that the petitioner be the first cousin of the incapacitated and that she has, as she alleges, the right to inherit from her *ab intestato,* does not give the petitioner the absolute right to be appointed tutrix. Section 181 of the Civil Code (1930 ed.) merely provides that the decree of incapacity of insane persons and of the deaf and dumb may be requested by the husband or wife and the relatives of the person presumed to be incapable who have the right to succeed him *ab intestato,* and said Section does not compel the court to grant the tutorship to said relatives. The only existent preference with respect to claiming the guardianship over insane persons and the deaf and dumb is that which is established by Section 186 of the Civil Code (1930 ed.) in favor of the husband or wife, the parents, the children, the grandparents and the brothers. In default of one of these persons, as in the case at bar, the court must appoint a person of acknowledged probity. Section 194 of the same Code so provides and the respondent court acted in accordance with that provision. The court could have appointed the petitioner, but it was not bound to do so by any legal precept. It was of the opinion that it was more convenient for the minor's interest to choose the person who, besides being of an acknowledged probity, is the same person selected by the deceased aunt, who loved and cared the incapacitated as if she were her mother until the day of her death. Manresa in volume 2, page 260, says:

"'We believe that the spirit of the Code, clearly expressed in several Sections and even in Section 231 itself, calls for the preference of the testamentary tutor in such a case, and natural reason also points out that preference as born from the love and care which parents must have when appointing a tutor for their children.

It does not matter that the designation were made for the case of a minor, and that the testator did not foresee a possible incapacity. The law must presume that if the parent's or testator's will had reached such a case, it would have preferred the person designated by him rather than any other person appointed by the law or by the family council."

As there is no reason or legal motive which justifies our intervention and as we are of the opinion that the lower court acted correctly within the discretion granted to it by law, we decide that the writ issued should be annulled and the petition denied, with costs imposed on the petitioner.